IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| v. | ) | 1:12cr69 |
| | ) | **Electronic Filing** |
| **JARRON DARVEZ JACKSON** | ) | |

## **OPINION**

Presently before the court is defendant's counseled motion to withdraw guilty plea and a number of *pro se* submissions that relate to or further reflect defendant's grounds for pursuing the motion. Through these submissions defendant seeks to proceed to trial on a defense predicated on his mental condition at the time of the offense and/or a defense of justification premised on coercion and duress. For the reasons set forth below, the motion will be denied.

On November 13, 2012, a grand jury returned a one count indictment charging defendant with being a felon in possession of a firearm, on or about April 16, 2011, in violation of 18 U.S.C. § 922(g)(1). The indictment charged that on that date defendant (1) had been convicted (a) on or about October 12, 2010, in the Court of Common Pleas of Erie County, Pennsylvania, of aggravated assault and (b) on or about July 19, 2004, in the Circuit Court of Cook County, Illinois, of aggravated battery, both of which were felony offenses, and (2) knowingly possessed a Kimber .45 caliber semi-automatic handgun. Defendant was arrested on March 1, 2013, in the District of Massachusetts. He was arraigned in this District on April 18, 2013, and entered a plea of not guilty. Defendant was detained pending trial after a detention hearing held on April 24, 2013.

Defendant initially was represented by Assistant Public Defender Thomas Patton. On October 2, 2013, AFPD Patton was permitted to withdraw from further representation and

Attorney Douglas Sughrue was appointed. On December 11, 2013, defendant's motion for a pre-plea investigation report was granted. A report limited to defendant's criminal history and whether he was subject to career offender status under the United States Sentencing Guidelines or the Armed Criminal Career Act was made available to defendant on February 28, 2014.

On April 7, 2014, defendant appeared with counsel for a change of plea hearing. Defendant entered a plea of guilty following an extensive inquiry by the court aimed at assuring defendant was making a knowing, informed and voluntary decision to do so. A sentencing hearing was set for August 11, 2014.

On July 16, 2014, defendant filed a *pro se* motion for appointment of substitute counsel. Defendant highlighted a number of disagreements with counsel, asserting that he would have been better served by a mental health examination in relation to his state of mind "now, prior to my alleged crime, and during my alleged crime." Motion for Substitute Counsel (Doc. No. 39) at 1. He further complained about counsel failing to raise matters pertaining to what he perceived as his criminal history being overstated. Id.[1] Defendant's *pro se* motion was granted on July 23, 2014, and current counsel was appointed to represent defendant. The final presentence investigation report was filed on July 30, 2014.

On August 10, 2014, defendant filed a motion to withdraw his plea, which was further amended on August 25, 2014.[2] Defendant contents that an affirmative defense and the potential ability to develop mitigating information provide a fair and just reason to permit a withdrawal of his guilty plea.

Specifically, defendant "wishes to withdraw his plea so that he may present a defense

---

[1] The time for counsel to raise such a challenge had not procedurally arisen at the time defendant filed this *pro se* motion. See Local Criminal Rule 32(C)(2), (C)(4). In fact, the complete presentence investigation report had not yet been made available to counsel.
[2] These motions were filed through the assistance of counsel.

2

based on one or both of the following circumstances: (A) the defendant's mental condition at the time of the offense in this case; (B) that the defendant was acting under coercion and duress so as to justify his possession of the firearm on the date in question." Amended Motion to Withdraw Guilty Plea (Doc. No. 50) at ¶ 5. He seeks to "submit to a jury a justification defense to the act of possessing a firearm after a felony conviction." Id. at ¶ 7.

Relying on United States v. Paolello, 951 F.2d 537, 540 (3d Cir. 1991) and United States v. Gomez, 92 F.3d 770, 775 (9th Cir. 1996), defendant maintains that the defense of justification can be submitted based on the following:

> Defendant went into a McDonald's restaurant to purchase a meal. He was unarmed and minding his own business. Also in that restaurant were five younger adult males. The Defendant and these 5 males were complete strangers and had never seen each other before. These males physically accosted and assaulted the Defendant for no apparent reason. One of these males picked up a chair and struck the Defendant with it. The males than ran out of the restaurant. The Defendant had no idea whether those males were leaving the scene or going to fetch firearm and return to the Defendant. (The Defendant's history includes an incident wherein he was shot 5 times. See PSR ¶ 72). A female companion was with the Defendant at the time. At this point, the Defendant ran to the vehicle in which he had arrived and removed a firearm, and wielded it against those 4 males.

Amended Motion at ¶ 10. These facts were recorded on the McDonald's video surveillance system and assertedly meet the elements needed to warrant submitting the matter to a jury. Id. at ¶ 11.

Defendant further raises the potential of examining and then pursuing a psychiatric defense pursuant to 18 U.S.C. § 17. And his plea purportedly "was the product of ineffective assistance of counsel for counsel's failure to investigate and pursue defenses to the indictment as described above. Therefore, Defendant asserts that his plea was not made knowingly and intelligently." Id. at ¶ 14.

In a *pro se* motion for reconsideration of release pending trial, defendant asserts he was

3

suffering from mental illness that had not been treated at the time of the altercation, he was reacting in a defensive manner, protecting his family and was not the initiator or aggressor. Defendant's *pro se* Motion for Release (Doc. No. 53) at 10. In a *pro se* response to the government's opposition to his motion to withdraw plea defendant reiterates in great detail the synopsis highlighted by counsel and recounted above. He also claims ineffectiveness on behalf of Attorney Suhgrue for failing to develop the affirmative defenses of mental defect, justification, coercion, duress. See generally Defendant's *pro se* Reply Brief in Support of Motion to Withdraw Plea (Doc. No. 58). He relies on a claimed condition of mental illness that existed prior to, during and after the incident giving rise to the charge in the indictment. Id. at 2. After his plea he became aware of the ability to plead an insanity defense and asserts that at the time of the incident he "was under unlawful and present imminent threat of death or serious bodily injury to self and loved ones, had not recklessly or negligently placed himself in a situation where he would be forced to engage in criminal conduct [and he] had no reasonable, legal alternative to violating the law and avoid the threatened harm to himself and loved ones." Id. at 4-5. And he asserts that a duress defense is available because the jury could find he lacked a "reasonable opportunity to escape the threatened harm [of immediate death or serious bodily injury]." Id. at 5.

The government opposes defendant's motion. It contends that the record demonstrates that the asserted affirmative defenses are not available in light of the events captured on the McDonald's surveillance video and the facts otherwise admitted by defendant during his change of plea hearing. Thus, from its perspective there is no fair and just reason to permit defendant to withdraw his guilty plea.

Rule 32(e), Fed.R.Crim.P., provides that "the court may permit withdrawal of the plea

upon a showing by the defendant of any fair and just reason." The rule establishes a privilege to seek the withdrawal of a guilty plea. There is no absolute right to withdraw a guilty plea entered after the full protections of Rule 11 have been afforded to the defendant. United States v. Vallejo, 476 F.2d 667, 669 (3d Cir. 1973); United States v. Hawthorne, 502 F.2d 1183, 1185-86 (3d Cir. 1974).

A defendant's privilege to withdraw a guilty plea before sentencing should be recognized "if for any reason the granting of the privilege seems fair and just." Kercheval v. United States, 274 U.S. 220, 224 (1927) (emphasis added). Evaluating such a request is a matter committed to the sound discretion of the court. United States v. Statyton, 408 F.2d 559, 561 (3d Cir. 1969). Common factors which should be considered in evaluating the request are: (1) whether the defendant asserts his innocence; (2) whether the government would be prejudiced by the withdrawal; and (3) the strength of the defendant's reasons for withdrawing the plea. United States v. Jones, 979 F.2d 317, 318 (3d Cir. 1992) (citing United States v. Huff, 873 F.2d 709, 712 (3d Cir. 1989)).

The defendant has the burden of establishing the grounds for withdrawal. Government of Virgin Islands v. Berry, 631 F.2d 214, 220 (3d Cir. 1980). "A simple shift in defense tactics, a change of mind, or the fear of punishment are not adequate reasons to force the government to incur the expense, difficulty and risk of trying a defendant, who has already acknowledged his guilt before the court." Id. Although a more liberal standard is employed prior to sentencing, after the cloak of innocence has been voluntarily and knowingly shed the defendant has the burden of establishing sufficient reasons to explain why contradictory positions were advanced and why permission should be given to reclaim the right to trial. Id.[3]

---

[3] "Were withdrawal automatic in every case where the defendant decided to alter his tactics and

5

As an initial matter, defendant's repeated protestations of mental defect and acting in self-defense lack any factual basis to support them, which in itself is a fatal deficiency in the showing he is required to make. See Berry, 631 F.2d at 220 ("Were mere assertion of legal innocence always a sufficient condition for withdrawal, withdrawal would effectively be an automatic right. There are few if any criminal cases where the defendant cannot devise some theory or story which, if believed by a jury, would result in his acquittal.") (citations omitted); Jones, 979 F.2d at 318 (a "defendant must ... not only reassert [his] innocence, but give sufficient reasons to explain why contradictory positions were taken before the district court and why permission should be given to withdraw the guilty plea"); Harris, 44 F.3d at 1209 (same). Thus, it is apparent that defendant merely has decided to alter his in tactics and pursue what can only be described as a contradictory position.

Moreover, a close reading of the entire record demonstrates the lack of merit in each of the reasons defendant advances for seeking permission to withdraw his plea. Defendant's repeated assertions of having acted while suffering from insanity or debilitating emotional or mental distress lack credibility and are undermined by numerous aspects of defendant's own conduct and statements to the court. Advancing a defense based on mental defect is governed in the first instance by the Legal Insanity Defense Reform Act, 18 U.S.C. § 17 ("the Act"). As the United States Court of Appeals for the Seventh Circuit has observed:

> Insanity, for our purposes, is a legal term. We do not ask whether [the defendant] is insane by psychiatric or psychological standards. Rather we ask only whether [the defendant] has established insanity as defined by the Legal Insanity Defense Reform Act (the "Act"). 18 U.S.C. § 17. Under that Act, [the defendant] can establish the

---

present his theory of the case to the jury, the guilty plea would become a mere jester, a temporary and meaningless formality reversible at the defendant's whim . . . . A guilty plea is no such trifle but 'a grave and solemn act' which is 'accepted only with care and discernment.'" Berry, 631 F.2d at 221 (quoting United States v. Barker, 514 F.2d 208, 221 (D.C. Cir.) (*en banc*), cert. denied, 421 U.S. 1013 (1975)).

affirmative defense of legal insanity only if he proves two facts by clear and convincing evidence. 18 U.S.C. § 17. First, [the defendant] must prove that he suffered from a severe mental disease or defect. Proof that he had a mental disorder is not enough. The Act requires that the mental disorder be severe. United States v. Salava, 978 F.2d 320, 322 (7th Cir.1992). Second, if [the defendant] proves this first element, the Act requires that he prove that his severe mental disorder rendered him unable at the time of the crime to appreciate the nature and quality or the wrongfulness of his acts. Id.

United States v. Shaler, 85 F.3d 1251, 1257 (7th Cir. 1996) (quoting United States v. Reed, 997 F.2d 332, 334 (7th Cir.1993). "Apart from the affirmative defense of insanity, the Act provides that '[m]ental disease or defect does not otherwise constitute a defense.'" United States v. Wall, 593 F. App'x 128, 130 (3d Cir. 2014) (quoting 18 U.S.C. § 17(a)).

Moreover, while the Act does not prohibit the use of psychiatric evidence to establish the lack of the requisite mens rea, it does "preclude defenses akin to partially diminished capacity or diminished responsibility." Pohlot, 827 F.2d at 903. Further, although the Act at least in theory permits the use of such evidence to negate mens rea, the United States Court of Appeals "has warned against the 'strong danger of misuse' of mental health evidence and explained that '[o]nly in the rare case ... will even a legally insane defendant actually lack the requisite mens rea purely because of mental defect.'" Wall, 593 F. App'x at 130 (quoting Pohlot, 827 F.2d at 900, 905 and citing United States v. Mezvinsky, 206 F.Supp.2d 661, 664 (E.D.Pa.2002) ("While the contours of the doctrines of diminished responsibility and diminished capacity are unclear, the defenses that Congress intended to preclude usually permit exoneration or mitigation of an offense because of a defendant's supposed psychiatric compulsion or inability or failure to engage in normal reflection; however, these matters do not strictly negate mens rea." ).

The record is devoid of anything that even remotely suggests that defendant was suffering from such a severe mental disease or defect on the night in question. And while

7

the presentence investigation report does reference defendant's diagnoses of depression, PTSD, insomnia, and anxiety rendered in May of 2013 after defendant was incarcerated, such information falls woefully short of meeting the threshold showing needed to pursue a formal mental health defense or a negation of the "knowing" requirement that is encompassed by a § 922(g)(1) charge.[4] Thus, the record lacks factual support for pursuing a mental defect defense and counsel cannot be faulted for failing to pursue such an approach. Compare United States v. Robinson, 804 F. Supp. 830, 832 (W.D. Va. 1992) (the Act precludes "evidence of mental disease for any other *affirmative defense* than the insanity defense.") (emphasis added).

Defendant's contention that he was advised inappropriately to forego pursuing a justification defense equally is devoid of supporting facts. The factual basis provided at defendant's change of plea hearing entailed the following:

> [O]n April 16, 2011, an argument ensued at McDonald's here at 12th and Sassafras Streets in the city of Erie. The entire altercation inside of the McDonald's restaurant, as well as most of the transactions that occurred outside of the restaurant, were captured on surveillance video footage from McDonald's.
> And the testimony and surveillance footage would show that the defendant was present there in the McDonald's restaurant, he became engaged in an argument, which ended up in an altercation between him and several other individuals. At one point in time you can actually see one of those individuals hitting Mr. Jackson with a chair.
> The video surveillance and testimony would show that those other individuals fled from McDonald's and ran out into the parking lot and entered their vehicle. The video surveillance footage then shows Mr. Jackson leaving the McDonald's restaurant, go over to the passenger side of his vehicle and retrieve a firearm. The evidence would show that as the other individuals were fleeing the parking lot in their vehicle, Mr. Jackson commenced shooting at the vehicle, and shot as many as seven rounds from the firearm that he had taken out of the vehicle towards the fleeing vehicle.
> The testimony would show that the vehicle that fled the scene was located, it actually became disabled, a bullet hole went through the gas tank. One blew out the back window. The tire was flattened and there was damage on the vehicle. Specifically, additional bullet damage to the bumper of the vehicle.
> Although the defendant drove away, steps were then taken to look around the

---

[4] Of course, the court can and will consider such matters in formulating an appropriate sentence.

> McDonald's parking lot and seven .45 caliber shell casings were found at the scene. In the gold Ford Explorer, that the other persons were in, they located a bullet that was retrieved as well. For some time the matter was under investigation in an effort to identify who the shooter was in the McDonald's.
>
> And on August 10, 2011, police developed leads that the person who was in the McDonald's restaurant was likely Jarron Jackson. Upon reviewing Mr. Jackson's booking photos and observing him in person and interacting with other folks who knew him, law enforcement concluded Mr. Jackson was in fact the person who possessed and fired the firearm that day.
>
> He was scheduled for a probation appointment on August 29, 2011 here in Erie County. Law enforcement officers met with him at that time, he was Mirandized and asked to talk. But he respectfully requested to speak with counsel first. After consulting with counsel, Mr. Jackson had agreed to a counseled interview. During the course of that interview, he admitted that he was in fact the person at the McDonald's, in fact, was the person who shot at the other vehicle.
>
> Mr. Jackson was asked where the firearm was. He said he still had it and that it was locked up. And there seemed to be a willingness for him to turn that firearm in. Then on September 13, 2011, the firearm was turned in to law enforcement through Mr. Jackson's prior counsel. It was in fact a Kimber .45 SIS as alleged in the indictment.
>
> And an interstate nexus determination on the firearm indicated that it had been manufactured in Yonkers, New York and, therefore, had traveled in interstate commerce. The ballistics testing done on the firearm with the casings and the bullet found at the scene and the vehicle determined that this in fact was the firearm that had been fired on April 16, 2011.
>
> Further, your Honor, the testimony would show that Mr. Jackson had in fact suffered the convictions identified in the indictment. That would include the October 12, 2010, at Docket No. 1649 of 2010, the conviction for aggravated assault here in Erie County. As well as on July 19, 2004, Circuit Court of Cook County, Illinois, a conviction for aggravated battery with great bodily harm. Thereby prohibiting him from firearm possession on April 16, 2011. That would be the nature of the government's proof.
>
> THE COURT: Mr. Jackson, as that summary pertains to you and your conduct, was it accurate?
>
> THE DEFENDANT: Yes, your Honor.

Change of Plea Hearing (Doc. No. 49) at 16-19. Defendant's *pro se* submissions reflect an account of the "alleged crime" that is consistent with this acknowledged summation.

Defendant's attempt to invoke the affirmative defense of justification is misplaced. Justification is "a valid defense to a felon-in-possession charge under 18 U.S.C. § 922(g)." United States v. Alston, 526 F.3d 91, 94 (3d Cir. 2008) (citing United States v. Paolello, 951 F.2d 537, 540-43 (3d Cir. 1991). This defense generally encompasses the defenses of duress,

9

necessity, and justification. Paolello, 951 F.2d at 540 ("While the defenses of justification and duress were at one time distinct ... '[m]odern cases have tended to blur the distinction between duress and necessity.' ") (quoting United States v. Bailey, 444 U.S. 394, 410, 100 S.Ct. 624, 62 L.Ed.2d 575 (1980)); accord Alston, 526 F.3d at 94 n.3 (collecting cases). It also includes a claim of self-defense. Alston, 526 F.3d at 94 n.3 ("We agree with other circuits that 'ease in administration favors treating [the common law defenses of duress, necessity, and self-defense], in a federal felon-in-possession case, under a single, unitary rubric: justification.'") (quoting United States v. Leahy, 473 F.3d 401, 406 (1st Cir. 2007)).

An instruction to the jury on a justification defense is appropriate where:

(1) the defendant was under unlawful and present threat of death or serious bodily injury;
(2) he did not recklessly place himself in a situation where he would be forced to engage in criminal conduct;
(3) he had no reasonable legal alternative (to both the criminal act and the avoidance of the threatened harm); and
(4) there is a direct causal relationship between the criminal action and the avoidance of the threatened harm.

Paolello, 951 F.2d at 540 (citing United States v. Crittendon, 883 F.2d 326, 330 (4th Cir. 1989); United States v. Lemon, 824 F.2d 763, 765 (9th Cir. 1987); United States v. Harper, 802 F.2d 115, 117 (5th Cir. 1986); and United States v. Wheeler, 800 F.2d 100, 107 (7th Cir. 1986); accord Alston, 526 F.3d at 95.

The defendant has the burden of proffering sufficient evidence to permit the jury to make affirmative findings on each element by a preponderance of the evidence. United States v. Dodd, 225 F.3d 340, 349 (3d Cir. 2000); cf. United States v. Bailey, 444 U.S. 394, 415 (1980) ("it is essential that the testimony given or proffered [by the defendant] meet a minimum standard as to each element of the defense so that, if a jury finds it to be true, it would support an affirmative defense-here that of duress or necessity."). Where the

defendant's "evidence, even if believed, fails to establish all of the elements of the duress defense, the trial court may rule upon the defense as a matter of law and need not submit it to the jury." United States v. Bifield, 702 F.2d 342, 346 (2d Cir. 1983) (citing Bailey, 444 U.S. at 415; United States v. Trapnell, 638 F.2d 1016, 1030-31 (7th Cir. 1980)); cf. Paolello, 951 F.2d at 542 ("Even under a narrow view of the justification defense in section 922(g) prosecutions, the evidence presented by Paolello, if believed, supported his defense, and the district court should have instructed the jury accordingly.") (citing Bifield, 702 F.2d at 346).

The first element requires the existence of a present threat of death or serious bodily injury. "Only in rare circumstances will anything but an 'immediate emergency' constitute a present threat." Alston, 526 F.3d at 95 n. 7 (citing United States v. Bell, 214 F.3d 1299, 1301 (11th Cir. 2000); Paolello, 951 F.2d at 541 ("[A]n interdicted person may possess the firearm no longer than absolutely necessary.") (citations omitted). In this regard a justification defense "will rarely lie in a felon-in-possession case unless the ex-felon, not being engaged in criminal activity, does nothing more than grab a gun with which he or another is being threatened . . . ." United States v. Perez, 86 F.3d 735, 737 (7th Cir. 1996); accord United States v. Mahalick, 498 F.3d 475, 479 (7th Cir. 2007) ("In practice, the defense has only applied to the individual who in the heat of a dangerous moment disarms someone else, thereby possessing a gun briefly in order to prevent injury to himself . . . , or to another.") (citations omitted)).

Here, as defendant notes, he was accosted at the McDonald's and was not the aggressor or instigator of the ensuing fight. But that does support defendant's contention that he can present a justification defense to the jury. Defendant admitted that the aggressors who accosted him left the McDonald's, got in a vehicle and were in the process of leaving the

parking lot when he reached his vehicle, retrieved the Kimber handgun and opened fire into the back of the vehicle. The video essentially captured this sequence of events. The pattern of the bullet holes likewise confirmed this sequences of events. Thus, any danger presented by the men in accosting defendant had subsided. In other words, there was no longer an imminent threat of death or serious bodily injury.

The lack of a present, imminent threat at the time defendant retrieved the firearm from the vehicle he had arrived in and shot at the vehicle leaving the parking lot forecloses a justification defense as a matter of law. See Alston, 526 F.3d at 95 (gaining possession of handgun directly after an individual who had robbed and shot defendant five times on a past occasion and had threatened "to get" him in the afternoon on the day in question did not present sufficient evidence to meet the minimal showing needed to establish that a present and imminent harm existed on that evening). And a proclaimed fear by defendant that the men might have returned to shoot or otherwise assault him falls short of the mark for the same reason. Id. at 96 ("Someone in Alston's circumstances must show more than a legitimate fear of life and limb, as possession of a firearm by a convicted felon in the hope of deterring an assault is unlawful."); accord Perez, 86 F.3d at 737 ("only in the most extraordinary circumstances, illustrated by United States v. Gomez, 81 F.3d 846 (9th Cir. 1996), where the defendant had sought protection from the authorities without success, will the defense entitle the ex-felon to arm himself in advance of the crisis merely because he fears, however sincerely and reasonably, that he is in serious danger of deadly harm. More often than not the basis of his fear will be his own involvement in illegal activities; and when the danger that gives rise to the fear results from engaging in such activities - from 'looking for trouble' - the defense is barred.") (Posner, J.) (quoting United States v. Wheeler, 800 F.2d 100, 107 (7th

Cir. 1986), <u>overruled on other grounds</u> by United States v. Splendorio, 830 F.2d 1382, 1393 (7th Cir. 1987) and citing <u>Paolello</u>, 951 F.2d at 541).

The record fails to supply sufficient evidence to support a finding that defendant did not place himself in a situation where he would be forced to engage in the charged criminal conduct. The vehicle was leaving the parking lot when defendant grabbed and discharged the handgun. He was at that point pursuing the men who had assaulted him in the McDonald's. He need not have gone to his car and retrieved the firearm. By doing so he actually placed himself in a situation where he chose to engage in the criminal conduct of possessing the handgun.

Moreover, it is well settled "that the defendant may not resort to criminal activity to protect himself or another if he has a legal means of averting the harm." <u>Perez</u>, 86 F.2d at 737 (citing <u>Bailey</u>, 444 U.S. at 410). In <u>Perez</u>, the court held that the defense of justification failed as a matter of law where the defendant saw three undercover officers outside his apartment, though they were crooks intending to rob him, and armed himself with a pistol that was in the possession of his girlfriend, and went to the bank to deposit money. <u>Id.</u> at 736-37. The court reasoned:

> Perez didn't have to go to the bank that afternoon. He could have remained in his apartment, where he felt safe, while calling the police and asking them to check out the suspicious-looking cars outside.

<u>Id.</u> at 737.

Here too, defendant did not have to leave the McDonald's and proceed to the parking lot to retrieve the handgun. He had the option of staying in the McDonald's when the men who accosted him left, and then notifying the employees that he had been threatened and needed the police to come to the restaurant. Or he could have called the police himself to report the assault

and his perceived belief that his safety remained in jeopardy. These readily available legal means to avoid the illegal conduct preclude an instruction on a justification defense. Compare United States v. Wofford, 122 F.3d 787, 791 (3d Cir. 1997) ("[The Defendant (who kept a gun and ammunition in the attic crawl-space of the residence where he was living due to threats to his life that followed his arrest for murdering members of the 'Hells Angels')] did not seek protection from law enforcement first, even though it was neither futile nor impossible for him to do so. He therefore [could not] satisfy the third element of the justification defense.").

Finally, the attenuated nature of the threat that existed by the time defendant retrieved the handgun from the vehicle precludes a finding that there was a direct causal relationship between defendant's possession of the handgun and the avoidance of the threat of harm defendant continued to perceive. "Someone in [defendant's] circumstances must show more than a legitimate fear of life and limb, as possession of a firearm by a convicted felon in the hope of deterring an assault is unlawful." Alston, 526 F.3d at 96. The immediacy and the specificity of the threatened harm must be compelling, and the defense of justification consistently has been rejected where the threat is diminished. Id. (collecting cases).

Defendant did not face an immediate emergency at the moment he retrieved the firearm from the vehicle. The generalized threat of harm he did face at that moment falls short of supplying a factual basis that would permit a finding that his possession was directly caused by the need to avoid the threat of future harm that confronted him. Such a possibility of danger is insufficient to support a defense of justification. Id.

The record fails to warrant any exploration into an affirmative defense based on mental defect. The circumstances surrounding defendant's possession of the handgun on April 16, 2011, fail to satisfy any of the requirements needed to proceed with a justification defense to a charge

of felon-in-possession in violation of 18 U.S.C. § 922(g)(1). Defendant's claim of innocence is unsupported and his reasons for withdrawing his plea lack legal merit. It follows that a fair and just reason for withdrawing the guilty plea entered on April 7, 2014, has not been presented and Attorney Sughrue was not ineffective in the counsel he provided. Consequently, defendant's motion to withdraw plea as amended and supplemented must be denied.

<u>Date: May 14, 2015</u>

                 <u>s/David Stewart Cercone</u>
                 David Stewart Cercone
                 United States District Judge


cc:  Marshall J. Piccinini, AUSA
   Lee Markovitz, Esquire

   (*Via CM/ECF Electronic Mail*)